Opinion for the court filed by Circuit Judge LOURIE. Concurring Opinion filed by Circuit Judge MAYER.
LOURIE, Circuit Judge.
This appeal has returned to the court following an up and down journey to and from the Supreme Court. In our original decision, we reversed the district court’s holding that granted WildTangent, Inc.’s (“WildTangent”) motion to dismiss Ultramercial, LLC and Ultramercial, Inc.’s (collectively “Ultramercial”) patent infringement complaint under Fed.R.Civ.P. 12(b)(6). See Ultramercial, LLC v. Hulu, LLC, 657 F.3d 1323 (Fed.Cir.2011), vacated sub nom. WildTangent, Inc. v. Ultramercial, LLC, 566 U.S. -, 132 S.Ct. 2431, 182 L.Ed.2d 1059 (2012). The district court had held that U.S. Patent 7,346,545 (the “'545 patent”), the basis for the complaint, does not claim patent-eligible subject matter under 35 U.S.C. § 101. See Ultramercial, LLC v. Hulu, LLC, No. 09-06918, 2010 WL 3360098 (C.D.Cal. Aug. 13, 2010)
The present posture of the case is that Ultramercial is again appealing from the decision of the United States District Court for the Central District of Califor *712 nia. Upon review of the '545 patent and the standards adopted by the Supreme Court, for the reasons set forth below, we conclude that the '545 patent does not claim patent-eligible subject matter and accordingly affirm the .district court’s grant of WildTangent’s motion to dismiss.
Background
Ultramercial owns the '545 patent directed to a method for distributing copyrighted media products over the Internet where the consumer receives a copyrighted media product at no cost in exchange for viewing an advertisement, and the advertiser pays for the copyrighted content. Claim 1 of the '545 patent is representative and reads as follows:
A method for distribution of products over the Internet via a facilitator, said method comprising the steps of:
a first step of receiving, from a content provider, media products that are covered by intellectual property rights protection and are available for purchase, wherein each said media product being comprised of at least one of text data, music data, and video data;
a second step of selecting a sponsor message to be associated with the media product, said sponsor message being selected from a plurality of sponsor messages, said second step including accessing an activity log to verify that the total number of times which the sponsor message has been previously presented is less than the number of transaction cycles contracted by the sponsor of the sponsor message;
a third step of providing the media product for sale at an Internet website;
a fourth step of restricting general public access to said media product;
a fifth step of offering to a consumer access to the media product without charge to the consumer on the precondition that the consumer views the sponsor message;
a sixth step of receiving from the consumer a request to view the sponsor message, wherein the consumer submits said request in response to being offered access to the media product; a seventh step of, in response to receiving the request from the consumer, facilitating the display of a sponsor message to the consumer; ap eighth step of, if the sponsor message is not an interactive message, allowing said consumer access to said media product after said step of facilitating the display of said sponsor message;
a ninth step of, if the sponsor message is an interactive message, presenting at least one query to the consumer and allowing said consumer access to said media product after receiving a response to said at least one query; a tenth step of recording the transaction event to the activity log, said tenth step including updating the total number of times the sponsor message has been presented; and an eleventh step of receiving payment from the sponsor of the sponsor message displayed.
'545 patent col. 8 11. 5-48. As the other claims of the patent are drawn to a similar process, they suffer from the same infirmity as claim 1 and need not be considered further.
As indicated above, Ultramercial sued Hulu, LLC (“Hulu”), YouTube, LLC (“YouTube”), and WildTarigent, alleging infringement of all claims of the 545 patent. Ultramercial, 2010 WL 3360098, at *1. Hulu and YouTube were dismissed from the case for reasons we need not *713 concern ourselves with here, Ultramercial, 657 F.3d at 1325, but WildTangent moved to dismiss for failure to state a claim, arguing that the 545 patent did not claim patent-eligible subject matter. Ultramercial, 2010 WL 3360098, at *2. The district court granted WildTangent’s pre-answer motion to dismiss under Rule 12(b)(6) without formally construing the claims. Id. at *6-7. Ultramercial timely appealed.
We reversed, concluding that thé district court erred in granting WildTangent’s motion to dismiss for failing to claim statutory subject matter. See Ultramercial, 657 F.3d at 1330. WildTangent then filed a petition for a writ of certiorari, requesting review by the Supreme Court. The Supreme Court granted the petition, vacated our decision, and remanded the case for further consideration in light of its decision in Mayo Collaborative Services v. Prometheus Laboratories, Inc., 566 Ú.S. -, 132 S.Ct. 1289, 182 L.Ed.2d 321 (2012). WildTangent, 132 S.Ct. 2431.
On remand, we again reversed, concluding that the district court erred in granting WildTangent’s motion to dismiss for failing to claim statutory subject matter. See Ultramercial, LLC v. Hulu, LLC, 722 F.3d 1335 (Fed.Cir.2013), vacated sub nom. WildTangent, Inc. v. Ultramercial, LLC, 573 U.S. -, 134 S.Ct. 2870, 189 L.Ed.2d 828 (2014). The saga continued as WildTangent filed a petition for certiorari from our 2013 decision, again requesting review by the Supreme Court.
While WildTangent’s petition was pending, the Supreme Court issued its decision in Alice Corp. v. CLS Bank International, 573 U.S. -, 134 S.Ct. 2347, 189 L.Ed.2d 296 (2014). In that case, the Court affirmed our judgment that method and system claims directed to a computer-implemented scheme for mitigating settlement risk by using a third party intermediary were not patent-eligible under § 101 because the claims “add nothing of substance to the underlying abstract idea.” See Alice, 134 S.Ct. at 2359-60. The Court in Alice made clear that a claim that is directed to an abstract idea does not move into § 101 eligibility territory by “merely requiring] generic computer implementation.” Id. at 2357.
Subsequently, the Court granted Wild-Tangent’s petition for a writ of certiorari, vacated our decision, and remanded the case for further consideration in light of Alice. See WildTangent, 134 S.Ct. 2870. We invited and received briefing by the parties. We also received four amicus briefs, all in support of the appellee, Wild-Tangent.
Discussion
As indicated, this case is back to this court on Ultramercial’s original appeal from the district court’s dismissal, but in its present posture we have the added benefit of the Supreme Court’s reasoning in Alice. We review a district court’s dismissal for failure to state a claim under the law of the regional circuit in which the district court sits, here the Ninth Circuit. Juniper Networks, Inc. v. Shipley, 643 F.3d 1346, 1350 (Fed.Cir.2011) (citation omitted). The Ninth Circuit reviews de novo challenges to a dismissal for failure to ' state a claim under Fed.R.Civ.P. 12(b)(6). Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir.2005). We review questions concerning patent-eligible subject matter under 35 U.S.C. § 101 without deference. Research Corp. Techs., Inc. v. Microsoft Corp., 627 F.3d 859, 867 (Fed.Cir.2010).
A § 101 analysis begins by identifying whether an invention fits within one of the four statutorily provided categories of patent-eligible subject matter: processes, machines, manufactures, and composi *714 tions of matter. 35 U.S.C. § 101. Section 101 “contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable.” Alice, 134 S.Ct. at 2354 (quoting Ass’n for Molecular Pathology v. Myriad Genetics., Inc., 569 U.S. -, 133 S.Ct. 2107, 2116, 186 L.Ed.2d 124 (2013)). In Alice, the Supreme Court identified a “framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts.” Id. at 2355 (citing Mayo, 132 S.Ct. at 1296-97). “First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts.” Id. If not, the claims pass muster under § 101. Then, in the second step, if we determine that the claims at issue are directed to one of those patent-ineligible concepts, we must determine whether the claims contain “an element or combination of elements that is ‘sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.’ ” Id. (quoting Mayo, 132 S.Ct. at 1294) (alteration in original).
Ultramercial argues that the '545 claims are not directed to the type of abstract idea at issue in Alice zone that was “routine,” “long prevalent,” or “conventional”— and are, instead, directed to a specific method of advertising and content distribution that was previously unknown and never employed on the Internet before. In other words, Ultramercial argues that the Supreme Court directs us to use a type of 103 analysis when assessing patentability so as to avoid letting § 101 “swallow all of patent law.” Alice, 134 S.Ct. at 2354. According to Ultramercial, abstract ideas remain patent-eligible under § 101 as long as they are new ideas, not previously well known, and not routine activity. Ultramercial contends, moreover, that, even if the claims are directed to an abstract idea, the claims remain patent-eligible because they extend beyond generic computer implementation of that abstract idea. Ultramercial argues that the claims require users to select advertisements, which was a change from existing methods of passive advertising and involves more than merely implementing an abstract idea.
WildTangent responds that the '545 claims are directed to the abstract idea of offering free media in exchange for watching advertisements and that the mere implementation of that idea on a computer does not change that fact. WildTangent contends that because the claims do no more than break the abstract idea into basic steps and add token extra-solution activity, the claims add no meaningful limitations to convert the abstract idea into patent-eligible subject matter.
We agree with WildTangent that the claims of the '545 patent are not directed to patent-eligible subject matter. Following the framework set out in Alice, we first “determine whether the claims at issue are directed to one of those patent-ineligible concepts.” Id. at 2355 (citing Mayo, 132 S.Ct. at 1296-97). The district court found that the abstract idea at the heart of the 545 patent was “that one can use [an] advertisement as an exchange or currency.” Ultramercial, 2010 WL 3360098, at *6. We agree.
We first examine the claims because claims are the definition of what a patent is intended to cover. An examination of the claim limitations of the '545 patent shows that claim 1 includes eleven steps for displaying an advertisement in exchange for access to copyrighted media. Without purporting to construe the claims, as the district court did not, the steps include: (1) receiving copyrighted media from a content provider; (2) selecting an ad after consulting an activity log to deter *715 mine whether the ad has been played less than a certain number of times; (3) offering the media for sale on the Internet; (4) restricting public access to the media; (5) offering the media to the consumer in.exchange for watching the selected ad; (6) receiving a request to view the ad from the consumer; (7) facilitating display of the ad; (8) allowing the consumer access to the media; (9) allowing the consumer access to the media if the ad is interactive; (10) updating the activity log; and (11) receiving payment from the sponsor of the ad. '545 patent col. 811. 5-48.
This ordered combination of steps recites an abstraction — an idea, having no particular concrete or tangible form. The process of receiving copyrighted media, selecting an ad, offering the media in exchange for watching the selected ad, displaying the ad, allowing the consumer access to the media, and'receiving payment from the sponsor of the ad all describe an abstract idea, devoid of a concrete or tangible application. Although certain additional limitations, such as consulting an activity log, add a degree of particularity, the concept embodied by the majority of the limitations describes only the abstract idea of showing an advertisement before delivering free content.
As the Court stated in Alice, “[a]t some level, ‘all inventions ... embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.’ ” Alice, 134 S.Ct. at 2354 (quoting Mayo, 132 S.Ct. at 1293). We acknowledge this reality, and we do not purport to state that all claims in all software-based patents will necessarily be directed to an abstract idea. Future cases may turn out .differently. But here, the 545 claims are indeed directed to an abstract idea, which is, as the district court found, a method of using advertising as an exchange or currency. We do not agree with Ultramercial that the addition of merely novel or non-routine components to the claimed idea necessarily turns an abstraction into something concrete. In any event, any novelty in implementation of the idea is a factor to be considered only in the second step of the Alice analysis.
The second step in the analysis requires us to determine whether the claims do significantly more than simply describe that abstract method. Mayo, 132 S.Ct. at 1297. We must examine the limitations of the claims to determine whether the claims contain an “inventive concept” to “transform” the claimed abstract idea into patent-eligible subject matter. Alice, 134 S.Ct. at 2357 (quoting Mayo, 132 S.Ct. at 1294, 1298). The transformation of an abstract idea into patent-eligible subject matter “requires more than simply stat[ing] the [abstract idea] while-adding the words ‘apply it.’ ” Id. (quoting Mayo, 132 S.Ct. at 1294) (alterations in original). “A claim that recites an abstract idea must include ‘additional features’ to ensure ‘that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].’ ” Id. (quoting Mayo, 132 S.Ct. at 1297) (alterations in original). Those “additional features” must be more than “well-understood, routine, conventional activity.” Mayo, 132 S.Ct. at 1298.
We conclude that the limitations of the '545 claims do not transform the abstract idea that they recite into patent-eligible subject matter because the claims simply instruct the practitioner to implement the abstract idea with routine, conventional activity. None of these eleven individual steps, viewed “both individually and ‘as an ordered combination,’ ” transform the nature of the claim into patent-eligible subject matter. See Alice, 134 S.Ct. at 2355 (quoting Mayo, 132 S.Ct. at 1297, 1298). The majority of those steps comprise the abstract concept of offering me *716 dia content in exchange for viewing an advertisement. Adding routine additional steps such as updating an activity log, requiring a request from the consumer to view the ad, restrictions on public access, and use of the Internet does not transform an otherwise abstract idea into patent-eligible subject matter. Instead, the claimed sequence of steps comprises only “conventional steps, specified at a high level of generality,” which is insufficient to supply an “inventive concept.” Id. at 2357 (quoting Mayo, 132 S.Ct. at 1294, 1297, 1300). Indeed, the steps of consulting and updating an activity.log represent insignificant “data-gathering steps,” CyberSource Corp. v. Retail Decisions, Inc., 654 F.3d 1366, 1370 (Fed.Cir.2011), and thus add nothing of.practical significance to the underlying abstract idea. Further, that the system is active, rather than passive, and restricts public access also represents only insignificant “[pre]-solution activity,” which is also not sufficient to transform an otherwise patent-ineligible abstract idea into patent-eligible subject matter. Mayo, 132 S.Ct. at 1298 (alteration in original).
The claims’ invocation of the Internet also adds no inventive concept. As we have held, the use of the Internet is not sufficient to save otherwise abstract claims from ineligibility under § 101. See CyberSource, 654 F.3d at 1370 (reasoning that the use of the Internet to verify credit card transaction does not meaningfully add to the abstract idea of verifying the transaction). Narrowing the abstract idea of using advertising as a currency to the Internet is an “attempt[ ] to limit the use” of the abstract idea “to a particular technological environment,” which is insufficient to save a claim. Alice, 134 S.Ct. at 2358 (citing Bilski v. Kappos, 561 U.S. 593, 610-11, 130 S.Ct. 3218, 3230, 177 L.Ed.2d 792 (2010)). Given the prevalence of the Internet, implementation of an abstract idea on the Internet in this case is not sufficient to provide any “practical assurance that the process is more than a drafting effort designed to monopolize the [abstract idea] itself.” Mayo, 132 S.Ct. at 1297. In sum, each of those eleven steps merely instructs the practitioner to implement the abstract idea with “routine, conventional activities],” which is insufficient to transform the patent-ineligible abstract idea into patent-eligible subject matter. Id. at 1298. That some of the eleven steps were not previously employed in this art is not enough — standing alone — to confer patent eligibility upon the claims at issue.
While the Supreme Court has held that the machine-or-transformation test is not the sole test governing § 101 analyses, Bilski 561 U.S. at 604, 130 S.Ct. 3218, that test can provide a “useful clue” in the second step of the Alice framework, see Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can., 687 F.3d 1266, 1278 (Fed.Cir.2012) (holding that the machine- or-transformation test remains an important clue in determining whether some inventions are processes under § 101), cert. denied, 573 U.S. -, 134 S.Ct. 2870, 189 L.Ed.2d 832 (2014). A claimed process can be patent-eligible under § 101 if: “(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing.” In re Bilski, 545 F.3d 943, 954 (Fed.Cir.2008) (en banc), aff'd on other grounds, Bilski 561 U.S. 593, 130 S.Ct. 3218.
The claims of the '545 patent, however, are not tied to any particular novel machine or apparatus, only a general purpose computer. ; As we have previously held, the Internet is not sufficient to save the patent under the machine prong of the machine-or-transformation test. CyberSource, 654 F.3d at 1370. It is a ubiquitous information-transmitting medium, not *717 a novel machine. And adding a computer to otherwise conventional steps does not make an invention patent-eligible. Alice, 134 S.Ct. at 2357. Any transformation from the use of computers or the transfer of content between computers is merely what computers do and does not change the analysis.
Although the preamble of claim 1 also requires a facilitator, '545 patent col 8,1. 6, the specification makes clear that the facilitator can be a person and not a machine, id. col. 3, 11. 47-50. Thus, nowhere does the '545 patent tie the claims to a novel machine.
The claims of the 545 patent also fail to satisfy the transformation prong of the machine-or-transformation test. The method as claimed refers to a transaction involving the grant of permission and viewing of an advertisement by the consumer, the grant of access by the content provider, and the exchange of money between the sponsor and the content provider. These manipulations of “public or private legal obligations or relationships,.business risks, or other such abstractions cannot meet the test because they are not physical objects or substances, and they are not representative of physical objects or substances.” Bilski, 545 F.3d at 963. We therefore hold that the claims of the '545 patent do not transform any article to a different state or thing. While this test is not conclusive, it is a further reason why claim 1 of the '545 patent does not contain anything more than conventional steps relating to using advertising as a currency.
CONCLUSION
Because the '545 patent claims are directed to no more than a patent-ineligible abstract idea, we conclude that the district court did not err in holding that the '545 patent does not claim patent-eligible subject matter. Accordingly, the decision of the district court granting WildTangent’s motion to dismiss is affirmed.
AFFIRMED
Concurring Opinion filed by Circuit Judge MAYER.