NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**IGNITE USA, LLC,**
*Appellant*

**v.**

**CAMELBAK PRODUCTS, LLC,**
*Appellee*

---

2016-2747

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2015-01034.

---

Decided: October 12, 2017

---

DAVID S. MORELAND, Meunier Carlin & Curfman, LLC, Atlanta, GA, argued for appellant. Also represented by STEPHEN M. SCHAETZEL.

STEVEN MARC WILKER, Tonkon Torp LLP, Portland, OR, argued for appellee. Also represented by ERIC BEACH, DAVID S. D'ASCENZO, JON P. STRIDE.

---

Before PROST, *Chief Judge,* WALLACH and TARANTO,
*Circuit Judges.*

WALLACH, *Circuit Judge.*

Appellee CamelBak Products, LLC ("CamelBak")
sought inter partes review of claims 1, 3, 6–7, and 10–15
("the Asserted Claims") of Appellant Ignite USA, LLC's
("Ignite") U.S. Patent No. 8,863,979 ("the '979 patent").[1]
The U.S. Patent and Trademark Office's ("USPTO")
Patent Trial and Appeal Board ("PTAB") issued a final
written decision finding claims 1, 3, 6, and 10–15 antici-
pated by International Publication No. WO 2005/115204
A1 ("Oosterling") (J.A. 765–85) and claim 7 obvious over
Oosterling. *See CamelBak Prods., LLC v. Ignite USA,
LLC* (*CamelBak I*), No. IPR2015-01034, 2016 WL
3227709, at \*18 (P.T.A.B. June 7, 2016); *see also Camel-
Bak Prods., LLC v. Ignite USA, LLC* (*CamelBak II*), No.
IPR2015-01034, 2016 WL 7047969 (P.T.A.B. Sept. 30,
2016) (J.A. 1–8) (denying Ignite's request for rehearing).

Ignite appeals. We have jurisdiction pursuant to 28
U.S.C. § 1295(a)(4)(A) (2012). We affirm.

---

[1] The application that led to the '979 patent is a
continuation-in-part of U.S. Patent Application Publica-
tion No. 13/610,406 ("the '406 application"), which claims
the benefit of U.S. Provisional Patent Application Publica-
tion No. 61/534,192. A continuing patent application is
"an application filed subsequently to another application,
while the prior application is pending, disclosing all or a
substantial part of the subject-matter of the prior applica-
tion and containing claims to subject-matter common to
both applications, both applications being filed by the
same inventor or his legal representative." *U.S. Water
Servs., Inc. v. Novozymes A/S*, 843 F.3d 1345, 1348 n.1
(Fed. Cir. 2016) (internal quotation marks and citation
omitted).

## BACKGROUND

### I. The '979 Patent

Entitled "Seal Mechanism for Beverage Container," the '979 patent relates "to a movable trigger/seal mechanism for a beverage container." '979 patent col. 1 ll. 20–21. "The seal assembly is rotatedly connected to the lid housing and movable between a use position and a cleaning position." *Id.*, Abstract. "The trigger member is connected to the lid housing and is capable of engaging the seal assembly in the use position, but not in the cleaning position." *Id.*

The '979 patent has fifteen claims. *Id.* col. 11 l. 36–col. 13 l. 14. Claims 1, 10, and 13 are the only independent claims. *Id.* col. 11 ll. 36–55 (claim 1), col. 12 ll. 32–48 (claim 10), col. 12 l. 57–col. 13 l. 8 (claim 13). Independent claim 1 is illustrative and recites:

A lid assembly for a beverage container, comprising:

a lid housing having a drink aperture;

a seal arm *connected to the lid housing* and movable between a first position, wherein the seal arm is adjacent the drink aperture, and a second position, wherein the seal arm is distal the drink aperture, the seal arm being *connected to the lid housing* in the first position and the second position, the first position being an operable position for assisting in opening and closing the drink aperture, and the second position being a cleaning position wherein the drink aperture is open for cleaning the lid assembly and wherein the seal arm is not capable of assisting in closing the drink aperture in the second position;

a drink seal *connected to one of the drink aperture* and the seal arm to assist in sealing the drink aperture; and,

a trigger member *connected to the lid housing*, wherein the trigger member is capable of operating the seal arm in the first position, and wherein the seal arm cannot be operated by the trigger member in the second position.

*Id.* col. 11 ll. 36–55 (emphases added).  Each of the Asserted Claims teaches a seal arm or trigger member "connected" to the lid housing or a drink aperture ("the connected limitation"), either expressly or through its attendant independent claim.  *See id.* col. 11 ll. 60–62 (claim 3), col. 12 ll. 16–19 (claim 6), col. 12 ll. 20–22 (claim 7), col. 12 ll. 49–51 (claim 11), col. 12 ll. 52–56 (claim 12), col. 13 ll. 9–11 (claim 14), col. 13 ll. 12–14 (claim 15).

## DISCUSSION

Ignite contends that the PTAB erred by misconstruing the connected limitation and finding claim 7 obvious over Oosterling.[2]  Appellant's Br. 1–2.  After articulating the

---

[2]    In its opening brief, Ignite also argues that "the [PTAB] erred in finding that Oosterling discloses a trigger member 'connected' to the lid housing (*regardless of how 'connected' is construed*)," Appellant's Br. 30 (capitalization modified) (emphasis added), such that Oosterling does not anticipate claims 1, 3, 6, and 10–15, *see id.* at 30–38.  However, at oral argument, Ignite confirmed that its anticipation argument is conditioned upon its claim construction argument.    Oral Arg.    at    8:33–48, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20 16-2747.mp3 ("If a non-permanent connection is . . . a proper construction, . . . then Oosterling shows a non-

applicable standard of review, we address these arguments in turn.

## I. Standard of Review

"We review the PTAB's factual findings for substantial evidence and its legal conclusions de novo." *Redline Detection, LLC v. Star Envirotech, Inc.*, 811 F.3d 435, 449 (Fed. Cir. 2015) (citation omitted). "Substantial evidence is something less than the weight of the evidence but more than a mere scintilla of evidence," meaning that "[i]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *In re NuVasive, Inc.*, 842 F.3d 1376, 1379–80 (Fed. Cir. 2016) (internal quotation marks and citations omitted). If two "inconsistent conclusions may reasonably be drawn from the evidence in record, [the PTAB]'s decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." *In re Cree, Inc.*, 818 F.3d 694, 701 (Fed. Cir. 2016) (internal quotation marks and citation omitted).

## II. Claim Construction

## A. Legal Standard

The PTAB gives "[a] claim . . . its broadest reasonable construction in light of the specification of the patent in

---

permanent connection."). Because we hold that the PTAB properly construed the connected limitation, *see infra* Section II.B, we do not separately address Ignite's conditional argument regarding anticipation, *see GraftTech Int'l Holdings, Inc. v. Laird Techs., Inc.*, 652 F. App'x 973, 983 (Fed. Cir. 2016) ("Because we conclude that the PTAB did not err in its construction of [the disputed limitation], we need not address [the appellant]'s conditional arguments as to the PTAB's [invalidity] determinations." (footnote omitted)).

which it appears." 37 C.F.R. § 42.100(b) (2016). A specification "includes both the written description and the claims" of the patent. *In re Packard*, 751 F.3d 1307, 1320 n.11 (Fed. Cir. 2014). A patent's specification, together with its prosecution history,[3] constitutes intrinsic evidence to which the PTAB gives priority when it construes claims. *See Microsoft Corp. v. Proxyconn, Inc.*, 789 F.3d 1292, 1297–98 (Fed. Cir. 2015). We review the PTAB's assessment of the intrinsic evidence de novo. *See id.* If the intrinsic evidence does not assign or suggest a particular definition to a claim term, the PTAB may rely upon extrinsic evidence (like dictionary definitions) to construe a claim. *See id.* "We review underlying factual determinations concerning extrinsic evidence for substantial evidence and the ultimate construction of the claim de novo." *In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1280 (Fed. Cir. 2015) (citation omitted), *aff'd sub nom.*, *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131 (2016).

## B. The PTAB Properly Construed the Connected Limitation

The PTAB concluded that "'connected' does not require a permanent connection and does not require that the connection 'prevent the component from being misplaced or disassociated from the lid assembly in both the operable and cleaning positions,' as [Ignite] argues. . . . Rather, 'connected' includes non-permanent connections." *CamelBak I*, 2016 WL 3227709, at *5 (citation omitted). Ignite maintains that the connected limitation should have been construed as "a connection

---

[3] A patent's prosecution history "consists of the complete record of the proceedings before the [US]PTO," which provides "evidence of how the [US]PTO and the inventor understood the patent." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (en banc) (citations omitted).

that prevents the component from being misplaced or disassociated from the lid assembly in both the operable and cleaning positions." Appellant's Br. 30; *see id.* at 21–30; J.A. 263–64. We agree with the PTAB that the connected limitation includes non-permanent connections.

The '979 patent's claims and specification teach that the connected limitation includes non-permanent connections. Claims 1, 11, and 13 each recite "a drink seal connected to one of a drink aperture and the seal arm to assist in sealing the drink aperture." '979 patent col. 11 ll. 50–51 (claim 1), col. 12 ll. 49–51 (claim 11), col. 13 ll. 7–8 (claim 13). However, figures 10–11 clearly depict drink seals that are disconnected from the drink apertures while the drink container is in the "open position." *See id.* figs.10–11, col. 3 ll. 60–63. Moreover, the specification teaches that "[t]he locking member portion . . . of the trigger member . . . is moveable radially inwardly and outwardly on the trigger member . . . *when* the trigger member . . . is connected to the lid housing." *Id.* col. 10 ll. 50–54 (emphasis added). The specification's use of "when" indicates that the trigger member is not always connected to the lid housing, such that the connection is non-permanent.

The prosecution history further confirms that the connected limitation includes non-permanent connections. Under certain circumstances, the prosecution history of a parent patent application may inform the construction of the claims of the continuations of the parent application. *See Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1314 (Fed. Cir. 2007) (explaining that "the prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution" and that "statements [involving prosecution disclaimer] in [a] familial application are relevant in construing the claims at issue"). Here, the '406 application, the application from which the '979

patent is a continuation-in-part, originally recited a "seal assembly rotatedly connected to the lid housing *and* movable between a first or operable position, and a second or cleaning position." J.A. 1082 (emphasis added). However, the examiner suggested the claims be amended to replace "and" with "while" to avoid an anticipation determination, because "*the use of the word AND does not require tha*[*t*] *the seal assembly always be connected* to the lid housing, while the use of the word WHILE would require the seal assembly and lid housing to maintain a connection while moving between the first and second position." J.A. 967 (emphasis added). Because the '979 patent's allowed claims likewise use the "lid housing *and* movable" language, *e.g.*, '979 patent col. 11 l. 38, it follows that the Asserted Claims "do[] not require tha[t] the seal assembly always be connected to the lid housing," J.A. 967.

Ignite's counterargument is unavailing. Ignite posits that "[t]he '979 patent is . . . explicit that when the patent recites that the seal arm and trigger member are 'connected to the lid assembly,' they are connected 'at all times' such that they 'cannot be misplaced or disassociated from the lid assembly.'" Appellant's Br. 23 (quoting '979 patent col. 4 ll. 38–39, 40–41, 44–45). However, the portions of the specification that Ignite quotes explicitly describe "a preferred embodiment," '979 patent col. 4 l. 25, and "we have repeatedly warned against confining the claims to th[e] embodiments" in a patent's specification, *Phillips*, 415 F.3d at 1323. Indeed, the '979 patent's specification is clear that it "is not intended to limit the broad aspect of the invention to the embodiments illustrated." *Id.* col. 4 ll. 11–12.

The intrinsic record supports construing the connected limitation to include non-permanent connections; thus, "we need not consider the [PTAB]'s findings on th[e extrinsic] evidence." *Microsoft*, 789 F.3d at 1297. Because the PTAB properly applied the broadest reasonable

construction of the connected limitation, we decline to narrow the limitation in accordance with Ignite's proffered construction.

## III. Obviousness

### A. Legal Standard

A patent claim is invalid "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the [relevant] art [('PHOSITA')]." 35 U.S.C. § 103(a) (2006).[4] Obviousness is a question of law based on underlying findings of fact. *See In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). Those underlying findings of fact include (1) "the scope and content of the prior art," (2) "differences between the prior art and the claims at issue," (3) "the level of ordinary skill in the pertinent art," and (4) the presence of objective indicia of nonobviousness such "as commercial success, long felt but unsolved needs, failure of others," and unexpected results. *Graham v. John Deere Co. of Kan. City*, 383 U.S. 1, 17 (1966); *see United States v. Adams*, 383 U.S. 49, 50–52 (1966). In assessing the prior art, the PTAB also "consider[s] whether a PHOSITA would have been motivated to combine the prior art to achieve the claimed invention." *In re Warsaw Orthopedic,*

---

[4] Congress amended § 103 when it enacted the Leahy-Smith America Invents Act ("AIA"). Pub. L. No. 112-29, § 3(b)(1), 125 Stat. 284, 285–87 (2011). However, because the application that led to the '979 patent has never contained (1) a claim having an effective filing date on or after March 16, 2013, or (2) a reference under 35 U.S.C. §§ 120, 121, or 365(c) to any patent or application that ever contained such a claim, the pre-AIA § 103 applies. *See id.* § 3(n)(1), 125 Stat. at 293.

*Inc.*, 832 F.3d 1327, 1333 (Fed. Cir. 2016) (internal quotation marks, brackets, and citation omitted).

### B. Substantial Evidence Supports the PTAB's Determination That Claim 7 Would Have Been Obvious Over Oosterling

Claim 7 recites "[t]he lid assembly of claim 1, wherein the seal arm can pivot approximately 90[ degrees] to transition from the first or operable position to the second or cleaning position." '979 patent col. 12 ll. 20–22. The PTAB determined that "it would have been obvious to a [PHOSITA] to have modified Oosterling to provide a seal arm that can pivot approximately 90 degrees to transition from the first position to the second position." *CamelBak I*, 2016 WL 3227709, at *16. Ignite contends that Oosterling could not be modified to provide a seal arm that can pivot 90 degrees and that a PHOSITA would not have been motivated to make this modification. *See* Appellant's Br. 42–56. We disagree.

Substantial evidence supports the PTAB's conclusion. Oosterling "relates to a closable drinking beaker comprising a beaker . . . having a side and a bottom, a lid . . . , means . . . for sealingly fastening the lid to the beaker . . . , with a drinking nozzle . . . and a valve . . . for closing the drinking nozzle . . . on the lid." J.A. 765. Although it is undisputed that "Oosterling does not expressly disclose that the seal arm rotates 90 degrees," J.A. 118, the PTAB relied upon the testimony of CamelBak's expert that "it would have been obvious to [a PHOSITA] to modify the lid . . . in Oosterling to allow the lever . . . to pivot approximately 90 degrees when transitioning from the first (operable) position to the second (cleaning) position," which would "allow increased cleaning access to the lever" and "prevent the action of the dishwasher spray from inadvertently closing the lever," *CamelBak I*, 2016 WL 3227709, at *14 (quoting J.A. 874). The PTAB further relied upon CamelBak's expert's

statement that the modification "could be accomplished in a multitude of ways that would have been obvious design choices and well known to [a PHOSITA], including increasing the width of the opening . . . and changing the shape or size of the spring." *Id.* (quoting J.A. 874). After thoroughly analyzing each of Ignite's counterarguments, *see id.* at *14–16, the PTAB then determined that Ignite "ha[d] not rebutted persuasively" CamelBak's explanation of "how the proffered modification of Oosterling based on knowledge of a [PHOSITA] renders obvious the subject matter of claim 7" or the "rationales for such a modification," *id.* at *16; *see* J.A. 2–8 (providing further explanation of why Ignite's arguments were unavailing). Therefore, the PTAB "adopted [CamelBak's reasoning] as [its] own." *CamelBak I*, 2016 WL 3227709, at *16.

The PTAB's obviousness analysis primarily consists of summaries and rejections of Ignite's arguments, which usually is insufficient to support a legal conclusion of obviousness. *See Icon Health & Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1046 (Fed. Cir. 2017) ("[T]he PTAB cannot satisfactorily make a factual finding and explain itself by merely summarizing and rejecting arguments without explaining why it accepts the prevailing argument." (internal quotation marks, alterations, and citation omitted)). However, the PTAB also explained that it found CamelBak's arguments and supporting evidence more persuasive. *CamelBak I*, 2016 WL 3227709, at *16. While "[u]ndoubtedly, it would be preferable for the PTAB to provide its own reasoned explanation" rather than adopt CamelBak's explanation of the modification to Oosterling, "we can discern" that the PTAB found the quoted testimony of CamelBak's expert persuasive. *Icon*, 849 F.3d at 1045. "This is sufficient, if minimally, to explain the connection between the [PTAB]'s factual findings [on the modification to Oosterling] and legal conclusion" of obviousness. *Id.*; *see Redline*, 811 F.3d at

454 (upholding findings regarding motivation to combine based on expert testimony).

Ignite's counterarguments are unpersuasive. Ignite's principal contention is that the PTAB improperly relied upon evidence submitted by CamelBak and disregarded evidence submitted by Ignite. *See* Appellant's Br. 42–50 (addressing the parties' evidence regarding the modifications to Oosterling), 50–56 (addressing the parties' evidence on motivation to modify Oosterling). However, "[w]e may not reweigh this evidence on appeal" and, accordingly, we decline to do so. *Warsaw*, 832 F.3d at 1333.

Ignite also avers that the PTAB improperly shifted the burden of persuasion to Ignite "to come forward and *disprove* the allegedly 'obvious' modification to Oosterling." Appellant's Br. 38; *see id.* at 38–42. Ignite supports its position by selectively quoting the PTAB's consideration and rejection of Ignite's counterarguments. *See id.* at 40–41. However, the PTAB did not simply reject Ignite's counterarguments; it also concluded that "it would have been obvious to [a PHOSITA] to have modified Oosterling to provide a seal arm that can pivot approximately 90 degrees to transition from the first position to the second position," *CamelBak I*, 2016 WL 3227709, at *16, and supported that conclusion with expert testimony, *see id.* at *14 (quoting J.A. 874). Contrary to Ignite's assertions, explaining why a party's arguments are not persuasive does not constitute improper burden shifting.

## CONCLUSION

We have considered Ignite's remaining arguments and find them unpersuasive. Accordingly, the Final Written Decision of the U.S. Patent and Trademark Office's Patent Trial and Appeal Board is

## **AFFIRMED**