NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**INTELLECTUAL VENTURES I LLC,
INTELLECTUAL VENTURES II LLC,**
*Plaintiffs-Appellants*

**v.**

**ERIE INDEMNITY COMPANY, ERIE INSURANCE
EXCHANGE, ERIE INSURANCE PROPERTY &
CASUALTY COMPANY, ERIE INSURANCE
COMPANY, FLAGSHIP CITY INSURANCE
COMPANY, ERIE FAMILY LIFE INSURANCE
COMPANY,**
*Defendants-Appellees*

---

2017-1147

---

Appeal from the United States District Court for the Western District of Pennsylvania in No. 1:14-cv-00220-MRH, Judge Mark R. Hornak.

---

Decided: November 3, 2017

---

CHRISTIAN JOHN HURT, Nix Patterson & Roach LLP, Dallas, TX, argued for plaintiffs-appellants. Also represented by DEREK TOD GILLILAND, Daingerfield, TX.

GREGORY H. LANTIER, Wilmer Cutler Pickering Hale and Dorr LLP, Washington DC, argued for defendants-appellees. Also represented by CLAIRE HYUNGYO CHUNG, KEITH THOMAS HOWELL; MONICA GREWAL, Boston, MA.

––––––––––––

Before PROST, *Chief Judge,* REYNA and WALLACH, *Circuit Judges.*

WALLACH, *Circuit Judge.*

Appellants Intellectual Ventures I LLC and Intellectual Ventures II LLC (together, "IV") sued Appellees Erie Indemnity Company et al. (collectively, "Erie") in the U.S. District Court for the Western District of Pennsylvania ("District Court"), alleging infringement of U.S. Patent No. 7,757,298 ("the '298 patent"). Erie responded by filing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), asserting that all claims of the '298 patent are patent ineligible under 35 U.S.C. § 101 (2012).[1] The District Court granted Erie's Motion to Dismiss. *See Intellectual Ventures I LLC v. Erie Indem. Co.*, 200 F. Supp. 3d 565, 577 (W.D. Pa. 2016).

IV appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) (2012). We affirm.

DISCUSSION

I. Standards of Review

We review a district court's dismissal under Rule 12(b)(6) according to the law of the regional circuit, *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1346 (Fed. Cir. 2014), here, the Third Circuit. The Third Circuit reviews de novo a dis-

––––––––––––

[1] Congress did not amend § 101 when it passed the Leahy-Smith America Invents Act. *See generally* Pub. L. No. 112-29, 125 Stat. 284 (2011).

trict court's grant of a motion to dismiss under Rule 12(b)(6). *Sands v. McCormick*, 502 F.3d 263, 267 (3d Cir. 2007).

We review issues "unique to patent law," including patent eligibility under § 101, consistent with our circuit's precedent. *Madey v. Duke Univ.*, 307 F.3d 1351, 1358 (Fed. Cir. 2002) (citation omitted); *see Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340–41 (Fed. Cir. 2013) (reviewing a § 101 question under Federal Circuit precedent). A district court's determination of patent eligibility under § 101 is an issue of law that we review de novo. *See Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1325 (Fed. Cir. 2017).

## II. The Claims of the '298 Patent Are Patent Ineligible Under 35 U.S.C. § 101

"Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of" Title 35 of the United States Code. 35 U.S.C. § 101. "The Supreme Court, however, has long interpreted § 101 and its statutory predecessors to contain an implicit exception: laws of nature, natural phenomena, and abstract ideas are not patentable." *Content Extraction*, 776 F.3d at 1346 (internal quotation marks and citation omitted).

The Supreme Court's decision in *Alice Corp. Pty. Ltd. v. CLS Bank International* provides the framework through which we assess patent eligibility under § 101. *See* 134 S. Ct. 2347, 2354–55 (2014). A patent

> claim falls outside § 101 where (1) it is "directed to" a patent-ineligible concept, *i.e.*, a law of nature, natural phenomenon, or abstract idea, and (2), if so, the particular elements of the claim, con-

sidered "both individually and 'as an ordered combination,'" do not add enough to "'transform the nature of the claim' into a patent-eligible application."

*Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (quoting *Alice*, 134 S. Ct. at 2355). We analyze the claims against this framework.

## A. The '298 Patent

Entitled "Method and Apparatus for Identifying and Characterizing Errant Electronic Files," the '298 patent purports to improve upon the prior art by providing a method and apparatus to detect "undesirable files" "stored on computer storage devices" "according to pre-set criteria." '298 patent col. 1 ll. 59−60, col. 2 ll. 40, 41−42. Specifically, the '298 patent teaches a method and apparatus whereby files "can be selected for review and characterized as acceptable or unacceptable," *id.* col. 1 ll. 56−57, which helps combat "great legal risks to [a] corporation," *id.* col. 1 l. 56, from "the presence of certain files (such as depictions of child pornography or copyrighted music files)," *id.* col. 1 ll. 53−55; *see id.* col. 2 ll. 48−57, col. 3 ll. 28−35 (similar); *see also Intellectual Ventures*, 200 F. Supp. 3d at 569 (characterizing the '298 patent as one that "recognizes various characteristics of files . . . that give away illegal, illicit, or offensive content . . . and in so doing, saves Web hosting services from criminal, copyright, or some other liability"). The files, once recognized as errant files using the '298 patent's "file identification application," will be marked for deletion from the hosting server. '298 patent, Abstract.

The District Court treated independent claim 1 as representative of the '298 patent, *Intellectual Ventures*, 200 F. Supp. 3d at 568, "and so may we," *Elec. Power*, 830 F.3d at 1352. Claim 1 recites:

A computer-implemented method for identifying and characterizing stored electronic files, said method comprising:

under control of one or more configured computer systems:

selecting a file from a plurality of files stored in a computer storage medium, wherein selecting the file is performed according to at least one of:

selecting the file based on the size of the file by determining *whether an aggregate size of plural identically-sized files exceeds a predetermined threshold*;

selecting the file based on *whether content of the file matches a file type* indicated by a name of the file; or

selecting the file based on *whether the file comprises data beyond an end of data marker* for the file;

generating an identification value associated with the selected file, wherein the identification value is representative of at least a portion of the content of the selected file;

comparing the generated identification value to one or more identification values associated with one or more of a plurality of unauthorized files; and

characterizing the file as an unauthorized file if the identification value matches one of the plurality of identification values associated with the unauthorized files.

'298 patent col. 12 ll. 21−44 (emphases added). Relevant here, claim 1 discloses three selection criteria, any one of which may be used to identify errant files, with selection based on: (1) size, i.e., "whether an aggregate size of plural identically-sized files exceeds a predetermined threshold," *id.* col. 12 ll. 29−30; (2) content, i.e., "whether content . . . matches a [certain] file type," *id.* col. 12 ll. 31−32; and (3) naming convention, i.e., "whether the file comprises data beyond an end of data marker," *id.* col. 12 ll. 33−34.

## B. The Claims of the '298 Patent Are Directed to an Abstract Idea

The District Court held that the '298 patent "merely claims a computerized solution to a longstanding problem that exists outside of computers: identifying and categorizing illicit files, the possession of which might subject an individual or organization to liability." *Intellectual Ventures*, 200 F. Supp. 3d at 575. It analogized the patent to solving problems faced by a "librarian tasked with marking and removing books containing pornographic material from a library." *Id.* IV contends that the District Court erred in holding that the claims of the '298 patent are directed to an abstract idea. Appellants' Br. 18−29. Specifically, IV argues that, because the '298 patent's claims "improve[] upon how computer systems detect unauthorized files" by teaching a "specific way of identifying unauthorized files using specific selection criteria that humans did not use," the patent's claims are not directed to an abstract idea. *Id.* at 20, 29. We disagree with IV.

"The Supreme Court and we have held that a wide variety of well-known and other activities constitute abstract ideas." *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1314 (Fed. Cir. 2016) (footnote omitted); *see id.* at 1314 n.5 (collecting cases). For example, in *BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC*, we held that a claim reciting a "content

filtering system for filtering content retrieved from an Internet computer network[, e.g., to prevent users from accessing certain websites,] . . . is [directed to] an abstract idea." 827 F.3d 1341, 1348 (Fed. Cir. 2016) (internal quotation marks and citation omitted). Additionally, in *Content Extraction*, we found the claims directed to an abstract idea where they claimed, inter alia, "collecting data" and "recognizing certain data within the collected data set." 776 F.3d at 1347. In *FairWarning IP, LLC v. Iatric Systems, Inc.*, we held that an automated system for "detecting fraud and/or misuse in a computer environment based on analyzing data" according to "one of several rules" was directed to an abstract idea. 839 F.3d 1089, 1093 (Fed Cir. 2016) (internal quotation marks and citation omitted). Finally in *CyberSource Corp. v. Retail Decisions, Inc.*, we found claims that could be "performed in the human mind[] or by a human using a pen and paper" were directed to patent-ineligible mental processes. 654 F.3d 1366, 1372 (Fed. Cir. 2011).

The claims of the '298 patent teach a method for "identifying and characterizing" files based on one of three selection criteria. '298 patent col. 12 ll. 21−22; *see id.* col. 12 ll. 28–34 (listing selection criteria). Taken together, the claims are directed to the identification of unwanted files in a particular field (i.e., a computer network) and otherwise concern data collection related to such identification, such that they are directed to an abstract idea under our precedent. *See Elec. Power*, 830 F.3d at 1353–54 (explaining that collection and analysis of information is directed to an abstract idea); *accord Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017) (discussing abstract idea precedent related to the collection, recognition, manipulation, and storage of data); *Symantec*, 838 F.3d at 1314 (characterizing materials "based on a known list of identifiers" is an abstract idea).

The specification lends further support to our conclusion that the claims of the '298 patent teach an abstract idea. The specification repeatedly notes that selection of errant files generally could be performed by humans, *see, e.g.*, '298 patent col. 1 ll. 56−58 (stating that, in related art, "[s]uch files can be selected for review and characterized as acceptable or unacceptable . . . using an automated or manual process"), col. 2 ll. 43−44 (identifying a goal of the present invention to "reduce[] the amount of manual review necessary"), col. 8 ll. 11−12 (acknowledging, in conjunction with use of the claimed invention, "it may . . . be advisable to manually review the file[s]"), col. 8 ll. 40−41 (similar), as IV itself acknowledges, *see* Appellants' Br. 29 ("It is true that computer administrators could manually review computer files and attempt to identify them as unauthorized."). Indeed, the specification explicitly notes that humans are capable of performing the first two selection criteria. *See* '298 patent col. 2 ll. 20−26 (describing manual review based on "a simple search for oversized files" and "identifi[cation] by name or size alone" and the relative shortcomings of such human-based review).

The parties dispute whether the third criteria, noting information beyond an end of data file marker, has a manual analog. *See* Appellants' Br. 26; *compare* Oral Arg. at 4:38−52, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2017-1147.mp3 (IV: "Past the end of the data file marker, there could be unauthorized file data associated with something beside the [file] . . . . That doesn't show up in that manual review."), *with id.* at 25:53−26:11 (Erie: "I don't think there's any argument that, even with respect to the end of data marker, humans couldn't do that, there's clearly . . . a non-digital analog to it."). We have found the idea of performing a search to ferret out sources with unwanted material "based on characteristics" of the source to be directed to an abstract idea, *see Symantec*, 838 F.3d at 1314 (footnote omitted), and the

idea of "recognizing certain data" within a set, without regard to the individual criteria, to be abstract, *see Content Extraction*, 776 F.3d at 1347. As such, the third criteria and the claims, considering "their character as a whole," are directed to a patent-ineligible abstract idea. *Elec. Power*, 830 F.3d at 1353 (internal quotation marks and citation omitted).

IV attempts to analogize the claims of the '298 patent to those involved in *McRO, Inc. v. Bandai Namco Games America Inc.*, 837 F.3d 1299 (Fed. Cir. 2016) and *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016), wherein we found claims of software patents were not directed to abstract ideas under *Alice* step one. *See* Appellants' Br. 20. In *McRO*, we held that, although the processes were previously performed by humans, "the traditional process and newly claimed method . . . produced . . . results in fundamentally different ways." *FairWarning*, 839 F.3d at 1094 (differentiating the claims at issue from those in *McRO*). In *McRO*, "it was the incorporation of the claimed rules, not the use of the computer, that improved the existing technology process," because the prior process performed by humans "was driven by subjective determinations rather than specific, limited mathematical rules." 837 F.3d at 1314 (internal quotation marks, citation, and alterations omitted). In contrast, the claims of the '298 patent merely implement an old practice in a new environment. *See* '298 patent col. 12 ll. 25−44 (describing the process of "selecting a file," "generating an identification value," "comparing" it to "a plurality of unauthorized files," and "characterizing the file as an unauthorized file if the identification value matches" one of the plurality of previously-identified unauthorized files). IV has not argued that the claimed processes of selecting errant files apply rules of selection in a manner different from those which humans used, albeit with less efficiency, before the invention was claimed.

The '298 patent's claims also differ from those found patent eligible in *Enfish*, where the claims were "specifically directed to a *self-referential* table for a computer database." 822 F.3d at 1337. The claims thus were "directed to a specific improvement to the way computers operate" rather than an abstract idea implemented on a computer. *Id.* at 1336. Here, by contrast, the '298 patent's claims are not directed to an improvement in the way computers operate. Though the claims purport to accelerate the process of finding errant files and to reduce error, we have held that speed and accuracy increases stemming from the ordinary capabilities of a general-purpose computer "do[] not materially alter the patent eligibility of the claimed subject matter." *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012). Instead, the claims of the '298 patent are more analogous to those in *FairWarning*, wherein we found claims reciting "a few possible rules to analyze audit log data" directed to an abstract idea because they asked "the same questions (though perhaps phrased with different words) that humans in analogous situations detecting fraud have asked for decades." 839 F.3d at 1094, 1095.

IV's counterarguments are unpersuasive. First, IV states that the U.S. Patent and Trademark Office's ("USPTO") Subject Matter Eligibility Guidelines ("Eligibility Guidelines") advise that the '298 patent's claims are not directed to an abstract idea because they are analogous to exemplary patent-eligible claims that are "directed towards physically isolating . . . and extracting malicious code . . . to create a sanitized communication in a new data file." Appellants' Br. 22 (quoting J.A. 180); *see id.* at 21–23; J.A. 178–80. However, as IV concedes, the Eligibility Guidelines are "not binding authority" on this court. Appellants' Br. 22 n.3; *see* 2014 Interim Guidance on Patent Subject Matter Eligibility, 79 Fed. Reg. 74,618, 74,619 (Dec. 16, 2014) (noting the Guidelines and accom-

panying explanatory example sets "do[] not have the force and effect of law"). Moreover, there is a distinct difference between software designed to root out malware, a concept the USPTO notes is "inextricably tied to computer technology," J.A. 180, and software designed to automate processes of file categorization and extraction like the claims of the '298 patent. The latter merely applies a well-known idea using generic computers "to the particular technological environment of the Internet." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014).

Second, IV repeatedly cites to the source code attached to the patent application for the file identification application limitation recited in claim 10 as evidence of patent eligibility, *see, e.g.*, Appellants' Br. 21, 25, 27; and the dependent claims' limitations of generating a "checksum," *see, e.g.*, *id.* at 22, 28 (discussing the checksum identification values of dependent claims); *see also* '298 patent col. 12 l. 51 (claim 3) ("The computer-implemented method of claim 1, wherein generating an identification value comprises generating a checksum."), col. 12 ll. 54–55 (claim 4) (similar, describing multiple checksums associated with different portions of stored files). However, IV has not challenged the designation of claim 1 as representative, so all claims of the '298 patent fall with representative claim 1, which fails the *Alice* step one analysis. *See Elec. Power*, 830 F.3d at 1352 (holding that all claims were patent ineligible where the appellant "neither argues for the validity of any other claim . . . nor presents any meaningful argument for the distinctive significance of any claims other than those included in [the representative] claim").[2] In sum, we find the claims

---

[2] Even if we consider the dependent claims' limitations and independent claim 10, our holding would not change. For claim 10, "the complexity of the implement-

of the '298 patent directed toward an abstract idea under *Alice* step one.

## C. The Claims of the '298 Patent Do Not Recite an Inventive Concept

The second step of the *Alice* test requires us to determine whether the subject patent's claims—when viewed individually and as an ordered combination—contain "an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." 134 S. Ct. at 2357 (internal quotation marks omitted). A claim contains an inventive concept if it "include[s] additional features" that are more than "well-understood, routine, conventional activities." *Id.* at 2357, 2359 (internal quotation marks, brackets, and citations omitted).

The District Court held that the claims of the '298 patent lack an inventive concept because they recite "generic functions, even if performed by a computer," that are not inventive because "[s]electing files based on identifiers

---

ing software . . . does not transform a claim reciting only an abstract concept into a patent-eligible system or method." *Accenture*, 728 F.3d at 1345. IV acknowledges that it has not claimed the source code, *see* Appellants' Br. 7 (stating "the inventor provided the application's source code" and "attached [it] as an exhibit" to the patent application (citations omitted)), and our § 101 analysis "focus[es] . . . on whether the *claims* of the asserted patents fall within the excluded category of abstract ideas," *Content Extraction*, 776 F.3d at 1346 (emphasis added). For the dependent claims' identification of files based on checksums, we have stated that "[t]he dependent claims' narrowing [of long familiar practices] to particular types of . . . relationships . . . does not change the [*Alice* step one] analysis." *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014).

and matching different files/identifiers is just what computers do." *Intellectual Ventures*, 200 F. Supp. 3d at 576. The District Court further held that the USPTO's allowance of the claims under the pre-*Alice* "machine-or-transformation test, by itself, i[s] not sufficient to render a claim patent-eligible, as not all transformations or machine implementations infuse an otherwise ineligible claim with an inventive concept." *Id.* at 577 (quoting *DDR Holdings*, 773 F.3d at 1256). IV argues that the District Court erred in its analysis under *Alice* step two because the claims of the '298 patent "recite novel file identification software that analyzes and identifies files in unconventional ways—applying three specific selection criteria and then performing a digital-signature-based lookup process." Appellants' Br. 30.[3] We disagree with IV.

---

[3] IV additionally alleges that the District Court improperly shifted the burden of proving an inventive concept to IV, failing to follow 35 U.S.C. § 282's mandate that "[t]he burden of establishing invalidity of a patent . . . shall rest on the party asserting such invalidity." Appellants' Br. 36 (quoting 35 U.S.C. § 282). The record contains no support for this argument. The court below referenced an earlier decision on related patents in which it "examined the state of § 101 jurisprudence," *Intellectual Ventures*, 200 F. Supp. 3d at 570, and expressly stated there that "[Erie] ha[s] the burden of demonstrating the[ patents] are not directed to patent-eligible subject matter," *Intellectual Ventures I LLC v. Erie Indem. Co.*, 134 F. Supp. 3d 877, 896 n.37 (W.D. Pa. 2015), *vacated in part on other grounds*, 850 F.3d 1315 (Fed. Cir. 2017). The District Court then reviewed Erie's submissions and explained why it found IV's rebuttal evidence insufficient to overcome Erie's showing of patent ineligibility. *See Intellectual Ventures*, 200 F. Supp. 3d at 576−77. "Con-

The claims of the '298 patent fail to provide an inventive concept. The '298 patent teaches a method that is repeatedly and explicitly referred to as "computer-implemented." *See, e.g.*, '298 patent col. 12 ll. 21, 45, 49, 52, 56, 63, 65, col. 13 ll. 1, 4. It further teaches a "computer system" comprised of "a server" and a "file identification application," *id.* col. 13 l. 7, 8, 11, but it never suggests that any of these computer components are non-generic, *see generally id.* When claims like those in the '298 patent are "directed to an abstract idea" and "merely requir[e] generic computer implementation," they "do[] not move into [§] 101 eligibility territory." *buySAFE*, 765 F.3d at 1354 (internal quotation marks and citation omitted); *see Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015) ("[C]laiming the improved speed or efficiency inherent with applying the abstract idea on a computer" does not "provide a sufficient inventive concept.").

IV's counterarguments are unpersuasive. First, IV looks to the prosecution history of the '298 patent, arguing that the three selection steps are not conventional because they were "added . . . during prosecution to obtain allowance of the claims." Appellants' Br. 34. However, "[w]hile the claims may not have been anticipated or obvious because the prior art did not disclose [the selection criteria], that does not suggest that the idea of ['selecting' errant files] is not abstract." *Symantec*, 838 F.3d at 1315; *see Diamond v. Diehr*, 450 U.S. 175, 188−89 (1981) ("The 'novelty' of any element or steps in a process, or even of the process itself, is of no relevance in deter-

---

trary to [IV]'s assertions, explaining why a party's arguments are not persuasive does not constitute improper burden shifting." *Ignite USA, LLC v. CamelBak Prods., LLC*, No. 2016-2747, 2017 WL 4548459, at *5 (Fed. Cir. Oct. 12, 2017).

mining whether the subject matter of a claim falls within the § 101 categories of possible patentable subject matter." (footnote omitted)).

Second, IV contends that the USPTO's allowance of the claims under the machine-or-transformation test "strongly suggests that the '298 patent claims patent-eligible subject matter." Appellants' Br. 37 (capitalization omitted). While the machine-or-transformation test "can provide a useful clue in the second step of the *Alice* framework," it "is not the sole test governing § 101 analyses." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014) (internal quotation marks and citations omitted); *see Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA, LLC*, 635 F. App'x 914, 919 (Fed. Cir. 2015) ("[P]ost-[]*Alice*, [the machine-or-transformation test] is no longer sufficient to render a claim patent-eligible." (citation omitted)). Under that test, "[a] claimed process can be patent-eligible under § 101 if," inter alia, "it is tied to a particular machine or apparatus." *Ultramercial*, 772 F.3d at 716 (internal quotation marks and citation omitted). In other words, the subject patent must disclose the use of an apparatus specific to the claimed invention. *See id.* The claims of the '298 patent, by contrast, disclose the use of general computer components. *See* '298 patent col. 12 l. 24 (claiming use of "configured computer systems"), col. 12 ll. 25−26 (claiming use of "a computer storage medium"), col. 13 l. 8 (disclosing "a server" and "a memory"), col. 13 l. 12 (disclosing a "file identification application" operative on the server). We find the claims do not recite an inventive concept under *Alice* step two.[4]

---

[4]    IV's additional arguments fail. First, IV contends that the claims satisfy *Alice* step two because "[t]hey do not preempt all—or even most—ways to identify potentially unauthorized files." Appellants' Br. 32. We have

CONCLUSION

We have considered IV's remaining arguments and find them unpersuasive. For these reasons, the Final Judgment of the U.S. District Court for the Western District of Pennsylvania is

**AFFIRMED**

---

previously considered preemption in both steps one and two of the *Alice* test. *Compare OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362−63 (Fed. Cir. 2015) (reviewing under step one), *with BASCOM*, 827 F.3d at 1350 (reviewing under step two). Regardless of which step the argument is made under, when a patent's claims "disclose patent[-]ineligible subject matter . . . , preemption concerns are fully addressed and made moot." *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015); *see OIP Techs.*, 788 F.3d at 1362−63 ("[T]hat the claims do not preempt all [inventions in the field] or may be limited to [certain processes in the field] do[es] not make them any less abstract."). Second, IV alleges that the District Court improperly granted Erie's Motion to Dismiss under Rule 12(b)(6) because it decided the § 101 issue "without considering a complete record." Appellants' Br. 41 (capitalization omitted); *see id.* at 41−43. "We have repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under . . . § 101 on a Rule 12(b)(6) motion." *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373 (Fed. Cir. 2016); *see id.* at 1373−74 (collecting cases).