NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**AUDATEX NORTH AMERICA, INC.,**
*Appellant*

v.

**MITCHELL INTERNATIONAL, INC.,**
*Appellee*

———————————

2016-1913, 2016-1914

———————————

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. CBM2014-00171, CBM2014-00173.

———————————

Decided: July 27, 2017

———————————

BEN J. YORKS, Irell & Manella LLP, Newport Beach, CA, argued for appellant. Also represented by DAVID C. MCPHIE; BENJAMIN HABER, Los Angeles, CA.

JASON C. WHITE, Morgan, Lewis & Bockius LLP, Chicago, IL, argued for appellee. Also represented by NICHOLAS A. RESTAURI; DION MICHAEL BREGMAN, AHREN CHRISTIAN HSU-HOFFMAN, Palo Alto, CA; THOMAS M. PETERSON, San Francisco, CA.

———————————

Before PROST, *Chief Judge,* O'MALLEY and CHEN, *Circuit Judges.*

PROST, *Chief Judge.*

Audatex North America, Inc. appeals from two covered business method ("CBM") review proceedings, Case Nos. CBM2014-00171 and -00173. In those proceedings, the Patent Trial and Appeal Board ("Board") held all claims patent ineligible under 35 U.S.C. § 101 and invalid as obvious under 35 U.S.C. § 103. We affirm.

I

These appeals involve U.S. Patent Nos. 7,912,740 ("'740 patent") and 8,468,038 ("'038 patent"). The '038 patent is a continuation of the '740 patent. Entitled "system and method for processing work products for vehicles via the world wide web," these patents relate to systems for entering data associated with an insurance claim for damaged vehicles. '740 patent col. 1 ll. 8–10; '038 patent col. 1 ll. 18–21. The systems process these data into a valuation report transmitted via the Internet, allowing insurance claims adjusters to access a vehicle valuation database more readily. *E.g.*, '740 patent col. 1 ll. 10–11, 48–51.

Upon instituting both CBM proceedings, the Board held all claims ineligible under § 101 and invalid as obvious under § 103. Audatex filed a motion to amend, cancelling claims 1–29 of the '740 patent and proposing substitute claims 30–58. It similarly moved to amend the '038 patent, cancelling claims 1–31 and proposing substitute claims 32–62.[1] Claims 37 and 40 of the '740 patent

---

[1]   This opinion refers to substitute claims 30–58 of the '740 patent and substitute claims 32–62 of the '038 patent collectively as "the proposed claims."

are representative. Appellant's Opening Br. 16 ("Audatex Br.").[2] Claim 37 directly depends from independent claim 30. We reproduce both claims below (underlined text indicates additions from original claims 1 and 8, respectively):

> 30. A method for obtaining an automobile insurance claim valuation report of a damaged vehicle <u>in association with the processing of an insurance claim,</u> comprising:
>
> transmitting a uniform resource locator over an electronic communication network from a client computer;
>
> connecting with a web site that corresponds to the uniform resource locator, the web site provides a plurality of web pages that allows an operator to input data relating to an insurance claim for the damaged vehicle<u>, the insurance claim being a request to recover market value or repair cost in association with an insurance policy;</u>
>
> entering data relating to the insurance claim;

---

[2] At oral argument, Audatex maintained that the '740 and '038 patents do not stand or fall together under § 101. Yet Audatex provided very little, if any, analysis specific to the '038 patent. Having reviewed its opening and reply briefs, we identified only a single sentence under its Argument heading where it provided separate treatment for this patent under § 101. *See* Audatex Br. 38–39 (discussing how elements recited in claim 41 purportedly affect the step-one analysis). This isolated argument neither affects our analysis under § 101, nor our conclusion regarding the representative nature of claims 37 and 40.

> providing a parts list and calculated estimate data through the web site; processing the entered data to generate a valuation report for the damaged vehicle, the valuation report provides a market value for the damaged vehicle, before the damaged vehicle was damaged, based on factors including mileage, condition, and geographic location; and,
>
> transmitting the valuation report to the client computer over the electronic communication network through the web site.
>
> 37. The method of claim 30, further comprising transmitting the valuation report from a valuation server to a web server before transmitting the valuation report to the client computer, the valuation report being generated by the valuation server with a database of vehicle values that is called by a first active server page, the parts list and calculated estimate data being provided by a program called by a second active server page.

J.A. 330–31.

According to Audatex, the substituted claims solve problems associated with utilizing data from constantly changing databases for multiple customers through the use of Active Server Page ("ASP") files. Audatex Br. 7; '740 patent col. 2 ll. 30–45. Claim 37, for example, employs two such ASP files: the first for calling a database of vehicle values; the second to call a program for providing vehicle parts lists and calculated estimate data. J.A. 331. These ASP calls allow the valuation server to generate valuation reports that adjusters use for their calculations. '740 patent col. 2 ll. 42–45. The proposed claims thus describe methods and systems for obtaining automobile insurance claim valuation reports by combining calls to multiple databases that provide customized insurance

estimate tools for insurance adjusters based on their specific needs.

After considering these amendments, the Board maintained its ineligibility and obviousness grounds for the proposed claims. J.A. 1–43 ('740 patent); J.A. 44–85 ('038 patent). Audatex appeals on both grounds. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## II

On appeal, Audatex asks the court to reverse the Board and hold that the proposed claims recite eligible subject matter and are non-obviousness in light of the prior art of record. We turn first to patent eligibility.

Patent eligibility under 35 U.S.C. § 101 is an issue of law reviewed de novo. *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340–41 (Fed. Cir. 2013). To determine patent eligibility, we apply a two-step process under *Alice Corp. Party v. CLS Bank International*, 134 S. Ct. 2347, 2355 (2014). *See also Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) (referring to step one as the "abstract idea" step and step two as the "inventive concept" step).

At the outset, we reject an evidentiary concern Audatex raises regarding the Board's application of the burden of proof for its amended claims. Audatex Br. 31–32. Specifically, it contends that the Board improperly shifted the burden to Audatex to prove the eligibility and patentability of the proposed claims. *Id.* at 31. We conclude that the proposed claims recite patent-ineligible subject matter regardless of who bears that burden for the reasons that follow.[3]

---

[3]    Audatex does not appear to dispute that under a de novo review, assignment of the burden of proof likely

A

Turning to step one, Audatex argues that the proposed claims are not abstract, but rather directed to specific improvements of computer-related technology. Specifically, it compares the claims to those we analyzed in *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016), and argues that the Board "vast[ly] oversimplifi[ed] the proposed claims despite our cautioning against such characterizations. Audatex Br. 38. For example, it contends that claim 40 of the '740 patent provides "a very specific way of generating a valuation report, including a special-purpose valuation server that processes the data and generates the valuation report with a database of vehicles values." *Id.* It emphasizes that the system employs a first ASP to call this database and requires a

---

bears little relevance to our § 101 analysis here. Oral Argument 9:29–55, http://oralarguments.cafc.uscourts.gov/mp3/2016-1913.mp3. Immediately pivoting from the burden issue, Audatex alternatively argued that the Board erred because it did not specifically address substitute claims 37 and 40 of the '740 patent under § 101. *Id.* at 9:56–10:09. We disagree. In its motion to amend and related reply brief, Audatex did not provide the Board with separate/specific patent-eligibility arguments for these claims. J.A. 323–28, 403–05. Rather, it set forth arguments applicable to the '740 patent more generally. *See, e.g.*, J.A. 328 ("The substitute claims for the '740 patent are quite different from the claim[s] in *Flook*."); J.A. 403 ("[T]he substitute claims . . . improve the functioning of the prior art systems."). In addition to providing a detailed patent-eligibility analysis for original claims 1–29, the Board considered these arguments in light of the newly amended claims, but determined that those amendments did not affect its analysis or conclusions. Oral Argument 10:10–40; J.A. 14–23, 33–35.

second ASP to call the parts lists and calculated estimate data. *Id.* It concludes that these features, "combined with other elements such as an electronic network, a client computer, and a web server that allows for the input of data relating to an insurance claim and transmission of a valuation report," render the claims non-abstract. *Id.* It further argues that the proposed claims provide several specific improvements over the prior art. *See, e.g., id.* at 40 ("Audatex figured out how to combine aspects of multiple prior art systems (such as obtaining a repair cost and a market valuation) into a single integrated architecture for simplifying the process of creating a vehicle valuation report.").

We conclude that the proposed claims are directed to the abstract idea of "providing a vehicle valuation through the collection and use of vehicle information." Here, the proposed claims recite nothing more than the collection of information to generate a valuation report for a damaged vehicle with the aid of well-known technology. They are neither directed to an improvement in computer functionality, nor provide a specific improvement in the way computers operate. *Cf. Enfish*, 822 F.3d at 1336–37. Rather, they embody an abstract idea that merely uses a computer and generic components as tools to collect these data and generate reports. This is insufficient under step one. *See Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016); *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016) (stating that claims "directed to the use of conventional or generic technology in a nascent but well-known environment" are not eligible under step one).

B

Regarding step two, Audatex argues that the proposed claims meet the inventive-concept test for two reasons: "First, they improve the technological infrastructure that is used to generate valuation reports. Second, the pro-

posed claims, when considered as a whole, consist of more than just conventional activities." Audatex Br. 42–43. Again, we disagree.

Here, the proposed claims neither improve the technological infrastructure nor provide solutions to challenges particular to the Internet. Rather, they add computer functionality and recite use of the Internet to increase the speed and efficiency of an abstract process. This is not enough. *See Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015) ("[M]erely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea."); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014) ("[T]he use of the Internet is not sufficient to save otherwise abstract claims from ineligibility under § 101."). Further, the proposed claims merely recite a host of generic computer components. For example, claim 37, which incorporates claim 30, recites: "a web site," "web pages," "a client computer," "an electronic communication network," "a database," "a web server," and "a valuation server." J.A. 330–31.

In addition to these indisputably conventional features, Audatex relies heavily throughout its briefing on the two ASPs recited in claims 37 and 40. But Audatex itself concedes that it did not invent ASPs, Audatex Br. 7–8, and the claims do not recite them in a manner that produces "a result that overrides the routine and conventional" use of these known features. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1258 (Fed. Cir. 2014). When viewed as an ordered combination, the proposed claims recite no more than the sort of "perfectly conventional" generic computer components employed in a customary manner that we have held insufficient to transform the abstract idea into a patent-eligible invention. *Intellectual Ventures I LLC v. Symantec Corp.*, 838

F.3d 1307, 1321 (Fed. Cir. 2016). We thus conclude that
the proposed claims fail step two as well.

We have considered Audatex's remaining arguments
but find them unpersuasive. Accordingly, we conclude
that the proposed claims recite patent-ineligible subject
matter under § 101. Having reached this conclusion, we
need not reach the obviousness grounds of Audatex's
appeal.

CONCLUSION

For the foregoing reasons, we conclude that the pro-
posed claims are ineligible under § 101 and affirm the
Board.

**AFFIRMED**