NOTE:  This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

_____

**MORTGAGE APPLICATION TECHNOLOGIES, LLC,**
*Plaintiff-Appellant*

**v.**

**MERIDIANLINK, INC.,**
*Defendant-Cross-Appellant*

_____

2020-1504, 2020-1645

_____

Appeals from the United States District Court for the Central District of California in No. 19-CV-704, Judge David O. Carter.

_____

Decided:  January 12, 2021

_____

STEPHEN M. LOBBIN, SML Avvocati PC, La Jolla, CA, for plaintiff-appellant.

RUDOLPH A. TELSCHER, JR., Husch Blackwell LLP, St. Louis, MO, for defendant-cross-appellant.  Also represented by KARA RENEE FUSSNER, DAISY MANNING; STEPHEN REID HOWE, Milwaukee, WI.

_____

Before PROST, *Chief Judge*, CLEVENGER and DYK, *Circuit Judges*.

Clevenger, *Circuit Judge*.

Mortgage Application Technologies, LLC ("MAT") appeals the final decision of the U.S. District Court for the Central District of California finding that the asserted claims of U.S. Patent No. 8,548,902 ("'902 patent") are invalid under 35 U.S.C. § 101. *Mortg. Application Techs., LLC v. Meridianlink, Inc.*, No. 19-CV-704, 2020 WL 1000581 (C.D. Cal. Jan. 6, 2020). MeridianLink, Inc. ("MeridianLink") cross-appeals from a separate decision that denied MeridianLink's motion for attorney's fees. *Mortg. Application Techs., LLC v. Meridianlink, Inc.*, No. 19-CV-704, 2020 WL 4187766 (C.D. Cal. Mar. 12, 2020). For the reasons set forth below, we affirm the district court's decision finding the '902 patent invalid and affirm the denial of MeridianLink's motion for attorney's fees.

I

MAT is the current assignee of the '902 patent, entitled "Systems for Online Lending Services via an Application Service Provider Network" which was issued on October 1, 2013. The '902 patent generally relates to an online loan origination service for creating and populating loan applications. It is undisputed that claims 1-7 are representative of claims 8-20.[1] Claims 1-7 are as follows:

---

[1]  MAT argues MeridianLink did not challenge claims 8-20 and these claims should be independently evaluated. This is plainly incorrect as MeridianLink did in fact challenge these claims. Furthermore, MAT does not explain why claims 8-20 are not properly represented by claims 1-7 as the district court determined. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018).

1. A system for providing an online loan origination service, comprising:

an application server having an Internet interface and configured to receive a loan application having loan application data, wherein the loan application data is in an Extensible Markup Language (XML) format, configured to automatically extract the loan application data, and hosting an automatic decision engine, wherein the automatic decision engine is configured to automatically process the loan application data and compare the loan application data to lender underwriting criteria to determine one or more compatible lenders;

a database server coupled to the application server, comprising a database preloaded with a PDF generated application form, and configured to receive the extracted loan application data, further configured to automatically populate a binary Portable Document Format (PDF) form file with the extracted loan application data, and further configured to automatically store the binary PDF form file loan application populated with the extracted XML loan application data for cross-platform access and viewing; and

a queue manager server coupled to the application server and the database server, wherein the queue manager server is configured to receive the loan application from the application server and wherein the database server is further configured to poll the queue manager server at specified periodic intervals and to receive the transfer

of the loan application data from the queue manager server in response to a poll.

2. The system of claim 1, wherein the binary PDF form file populated with the extracted loan application data and the extracted XML loan application data are stored in a Structured Query Language (SQL) database residing on the database server.

3. The system of claim 1, wherein the application server is further configured to provide access to the binary PDF form file populated with the extracted loan application data stored in the database server to an authorized user via the Internet based on a receipt of credential information relating to the authorized user.

4. The system of claim 1, further comprising a messaging server coupled to the application server and the database server, wherein the messaging server is configured to generate an electronic message including information relating to a status of the loan application.

5. The system of claim 1, wherein the population, by the database server, of the binary PDF form file with the extracted loan application data includes Base 64 encoding.

6. The system of claim 1, wherein the population, by the database server, of the binary PDF form file with the extracted loan application data includes hexadecimal encoding.

7. The system of claim 1, wherein the population, by the database server, of the binary PDF form file with the extracted loan application data includes using unparsed entities.

II

On May 17, 2017, Larry Porter, the named inventor on the '902 patent and the then-assignee, sent a cease and desist letter to MeridianLink along with a draft complaint alleging infringement of the '902 patent. Mr. Porter and MeridianLink communicated with each other thereafter, and MeridianLink indicated its belief that the '902 patent was directed to patent-ineligible subject matter under 35 U.S.C. § 101 in light of governing precedents. Meridian-Link also informed Mr. Porter that he may risk paying MeridianLink's attorney fees if he were to litigate the case.

On January 30, 2019, Mr. Porter assigned the '902 patent to MAT, his LLC that was formed on December 5, 2018, and that same day MAT filed the complaint against MeridianLink in the Southern District of California, which was subsequently transferred to the Central District of California. At this point in time, Mr. Porter had also hired new counsel to represent him. After filing the suit, and prior to MeridianLink providing its answer, Mr. Porter attempted to settle the case for $150,000, which Meridian-Link rejected.

MeridianLink filed its answer in May 2019, after which the case remained pending for several months without any discovery requests from MAT. During this time, no claim construction was proposed or exchanged by MAT, and MAT took the position that any claim construction should be presented in dispositive motions near the end of the case.

On October 23, 2019, MeridianLink moved for judgment on the pleadings under Rule 12(c) asserting that the '902 patent was directed to an abstract idea under § 101 and *Alice*. The district court found that no hearing was necessary and granted the motion on January 6, 2020. The district court reasoned that the '902 patent was invalid under the *Alice* test because it was directed to an abstract idea of information exchange, and the claims, both individually and in combination, did not add anything "significantly

more" to the abstract concept. *Mortg. Application*, 2020 WL 1000581, at \*6 (internal citation omitted). Rather, as the district court articulated, the claims were not directed to how information exchange will occur but "simply recites a method of information exchange," which is the abstract idea in and of itself. *Id.* at \*6.

After the case was dismissed, MeridianLink filed a motion for attorney's fees under 35 U.S.C. § 285, arguing that this was an exceptional case which warranted the awarding of fees. The district court disagreed, explaining that this case was not exceptional. First, the district court found that MAT's position was not substantially weak simply because "similar patents had been invalidated in the past." *Mortg. Application*, 2020 WL 4187766, at \*2. Second, the district court determined that MAT's litigation conduct was not unreasonable because MAT's settlement offer did not appear to seek a nuisance settlement, MAT had only sued two other parties, and there was insufficient evidence to make an adverse inference for why MAT's former counsel withdrew or why Mr. Porter formed MAT to begin with, aside from availing himself of the benefits of an LLC. *Id.* at \*4.

MAT timely filed its appeal from the district court's decision invalidating the '902 patent under § 101, and MeridianLink timely filed its cross-appeal of the district court's decision denying its motion for attorney's fees. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

III

We start by addressing MAT's appeal on the § 101 issue, and then will turn to MeridianLink's cross-appeal on the motion for attorney's fees.

A

We review the district court's Rule 12(c) dismissal under the law of the regional circuit, here the Ninth Circuit. *Nat. Alts. Int'l, Inc. v. Creative Compounds, LLC*, 918 F.3d

1338, 1342 (Fed. Cir. 2019) (noting that the Rule 12(c) analysis is "functionally identical" to the standard for deciding a Rule 12(b)(6) motion to dismiss) (citing Ninth Circuit law). The Ninth Circuit reviews a court's grant of judgment on the pleadings de novo. *Daewoo Elecs. Am. Inc. v. Opta Corp.*, 875 F.3d 1241, 1246 (9th Cir. 2017). Like the district court, we must accept all allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1378 (Fed. Cir. 2019)(*citing* Ninth Circuit law).

Patent eligibility under § 101 is a question of law that may involve underlying questions of fact. *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1342 (Fed. Cir. 2018). The district court's ultimate conclusion on patent eligibility is reviewed de novo. *Id.* "Patent eligibility may be determined on a Rule 12(c) motion, but only when there are no factual allegations that, if taken as true, prevent resolving the eligibility question as a matter of law." *MyMail, Ltd.*, 934 F.3d at 1379.

When reviewing patent eligibility under § 101, we must undergo the two-step analysis articulated in *Alice. Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216-18 (2014). First, we consider whether the claims are directed to a patent-ineligible concept such as an abstract idea, law of nature, or natural phenomenon. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (*citing Alice*, 573 U.S. at 216-18). If the claims are directed to a patent-ineligible concept, we move to the second step to "determine whether the claim elements, considered both individually and as an ordered combination, transform the nature of the claim into a patent-eligible application, of that concept." *MyMail, Ltd.*, 934 F.3d at 1379 (internal quotation marks omitted). "[I]f the parties raise a claim construction dispute at the Rule 12(c) stage, the district court must either adopt the non-moving party's constructions or resolve the dispute to whatever extent is needed to conduct the § 101 analysis." *Id.*

B

Prior to conducting the § 101 analysis, we must first address the issue raised by MAT on claim construction. MAT argues that the district court erred when it forwent claim construction prior to its § 101 analysis. MAT cites to a concurrence in our case *Natural Alternatives International, Inc. v. Creative Compounds, LLC* for the proposition that any § 101 determination should be deferred until after claim construction. 918 F.3d at 1351. MAT's arguments fail for three reasons. First, MAT did not raise any claim construction dispute and did not provide any proposed construction, but rather stated that the terms simply "should be construed." *Mortg. Application*, 2020 WL 1000581, at *3 (internal citation omitted)**.** In fact, MAT concedes that the 12 claim terms it lists "need not be construed" and should simply be afforded their plain and ordinary meaning. Appellant's Br. 20 n. 4. Second, MAT did not explain how any proposed construction would change the § 101 analysis. *See Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) (affirming district court's § 101 determination in a motion to dismiss prior to claim construction because plaintiff proposed no construction that would have changed the § 101 analysis). Third, this case is factually distinct from *Natural Alternatives International*. In that case, our court had adopted concrete constructions proposed by the plaintiff, which the concurrence-in-part did not think were correct.[2] *Nat. Alts. Int'l*, 918 F.3d at 1351-52. Since no constructions were proposed in this case and there was no dispute regarding the same, the district court did not err when it did not conduct any claim construction prior to the § 101 analysis.

---

[2]    As MAT also concedes, the discussion in the concurrence regarding deferral of § 101 analysis is not the rule of this court.

C

Under the first step of the *Alice* framework, the district court concluded that claims 1-7 of the '902 patent were drawn "to the abstract idea of information exchange in an online loan application process which can easily be performed by a human." *Mortg. Application*, 2020 WL 1000581, at *3. We agree with the district court's characterization of the claims.

We consider "what the patent asserts to be the 'focus of the claimed advance over the prior art.'" *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019) (quoting *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016)). The claims, prosecution history, and specification of the '902 patent make clear that the focus of the claims, with respect to the prior art, is the exchange and storage of information. Claim 1, for example, describes a process in which data is received in one format, automatically extracted, compared to a set criteria, populated into a second document, and then stored for and retrieved by a user. The specification further supports this conclusion by stating that an objective of the claimed technology is to "automatically take loan application data," "populate" a database, inclusive of a PDF with that data, and then "automatically migrate[] the data" to a source "all by automatic message queuing which keeps all interested parties advised." J.A. 36, 3:52-61. The entire focus of the claims are to "facilitate[] the flow of information throughout the mortgage lending process." J.A. 36, 3:30-31. During prosecution, the applicant even emphasized that the claims were distinct from the prior art because the prior art disclosed a manual method of "processing loan applications and searching for compatible lenders" whereas the '902 patent's claims were directed to an automated process. J.A. 415. Mr. Porter also indicated that the claimed invention was meant to be a "fully automated system" of the "online lending process." J.A. 401, ¶11.

We have previously held that a process that can be and has been performed by humans without the use of a computer, as the prosecution history shows here, is an abstract idea. *See Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324 (Fed. Cir. 2016) (finding that the asserted claims drawn to a computerized loan application process could all be performed by a human and thus were abstract). We have further held that information storage and exchange is an abstract idea even when it uses computers as a tool or is limited to a particular technological environment. *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343 (Fed. Cir. 2014); *see also Audatex N. Am., Inc. v. Mitchell Int'l, Inc.*, 703 F. App'x 986, 989 (Fed. Cir. 2017) (finding claims abstract that "merely use[] a computer and generic components as tools to collect" data and generate reports). The mere automation of the exchange and storage of information does not render the claims any less abstract. *See Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1013 (Fed. Cir. 2018). Thus, we find that the claims here are directed to an abstract idea.

D

We also agree with the district court that under step two of the *Alice* analysis, the claims are not patent-eligible. Under this step, we must "determine whether the claims do significantly more than simply describe [the] abstract method" and thus transform the abstract idea into patentable subject matter. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014). In doing so, we look to see if there are "additional features" that would constitute an inventive concept and are more than "well-understood, routine, conventional activity" thereby transforming the claims into something patent eligible. *Intell. Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1328 (Fed. Cir. 2017).

The claims at issue do not rise to the level of improving technological infrastructure or providing solutions to challenges particular to loan application processing. *See Intell. Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015) ("[M]erely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea."). The claims do not add anything beyond conventional technology, and thus do not transform the claims to something more than the abstract idea of information exchange and storage.

MAT argues that the technological solution of the patent is a universal protocol or software that deals with multiple non-compatible third-party software and the issue of transferring information from one format into another format. However, these features that MAT contends are the innovative technological solutions never appear in the claims. At best, they simply appear in the form of the abstract idea (e.g. exchanging information from XML to PDF format) without any indication of how the innovative feature is achieved or applied. Indeed, claims that do not define the particular features used to achieve the alleged advantage cannot be said to pass step two of the *Alice* analysis. *See Intell. Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1342 (Fed. Cir. 2017).

IV

We now turn to MeridianLink's cross-appeal on the denial of attorney's fees. Under 35 U.S.C. § 285 "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." "[A]n 'exceptional' case is one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 134 S. Ct. 1749, 1756, 188 L. Ed. 2d 816 (2014). "District

courts may determine whether a case is 'exceptional' in a case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* Section 285 "imposes no specific evidentiary burden" and is rather "a simple discretionary inquiry[.]" We review the district court's exceptional case determination for abuse of discretion. *See Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 564, 134 S. Ct. 1744, 1749, 188 L. Ed. 2d 829 (2014). Because the district court did not abuse its discretion, we affirm.

A

The district court's decision clearly and adequately explained the basis for denying the motion for attorney's fees. The district court considered the totality of the circumstances when it explained that based on the evidence before it, including the substantive strength of MAT's litigation position as well as MAT's litigation conduct, that this was not an exceptional case.

MeridianLink argues that MAT's actions evidence abusive litigation tactics in an attempt to extract a nuisance value settlement. MeridianLink cited MAT's offer of a low settlement value, litigation against two other entities, failure to advance the case on its merits, eleventh-hour formation of MAT as an LLC, and assignment of the '902 patent to MAT on the same day the suit was filed, as evidence of improper litigation conduct. We cannot agree that the district court abused its discretion when it decided not to make adverse inferences from the cited evidence.

The district court found that the small amount of the proposed settlement and its proximity to the cost of litigation and MAT's lawsuit against only two other companies was insufficient to show abusive litigation conduct or an attempt to extract a quick settlement. *Mortg. Application*, 2020 WL 4187766, at *4; *see SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1351 (Fed. Cir. 2015) ("The mere existence of these other suits does not mandate negative inferences

about the merits or purpose of this suit."); *cf. Eon-Net LP*, 653 F.3d at 1327 (where the plaintiff filed over one hundred lawsuits against diverse defendants).

The district court also did not make any adverse inferences as to why the original non-patent attorneys representing Mr. Porter withdrew or why Mr. Porter formed MAT other than to avail himself of the benefits of an LLC. *Mortg. Application*, 2020 WL 4187766, at *4. MeridianLink has not pointed to indisputable evidence that requires us to draw a different inference from MAT's conduct. As such, we are not at liberty to disturb the findings of the district court nor can we conclude that it abused its discretion.

B

MeridianLink further argues that the district court underestimated the weakness of MAT's litigation position in light of the relevant caselaw, and that this case is exceptional because it "was not a close call under *Alice*." Cross-Appellant Br. 64. The district court, however, reviewed the relevant case law and found that MAT's litigation position was not substantively weak. Although the '902 patent is ineligible under § 101, it was unlike a number of other cases that MeridianLink cites in which the patents at issue were drawn to a fundamental economic processes. Specifically, as the district court stated, the claims in this case are drawn to an abstract process that is applied to a fundamental economic process. *Mortg. Application*, 2020 WL 4187766, at *3. MeridianLink argues that although the district court distinguished this case from a number of precedential cases, it did not distinguish this case from a few other cases MeridianLink cites. We are not persuaded that the handful of cases finding patent ineligibility under § 101, including *Audatex*, is sufficient to show that the district court abused its discretion in ultimately denying MeridianLink's motion for attorney's fees. As discussed above, the district court may consider the totality of the circumstances when exercising its discretion. Because the district

court explained it did not find MAT's litigation conduct to be unreasonable and did not find MAT's litigation position to be substantially weak when considering the totality of the circumstances, we affirm its judgment.

## V

For the foregoing reasons, we *affirm* the judgment of the U.S. District Court for the Central District of California finding the claims of MAT's '902 patent ineligible and denying MeridianLink's motion for attorney's fees.

**AFFIRMED**